UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| NICK MOGENSEN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 3:12-cv-00954-HES-JRK |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | |
| BODY CENTRAL CORPORATION, B. ALLEN WEINSTEIN, THOMAS STOLTZ and BETH R. ANGELO, | ) ) ) ) | |
| Defendants. | ) ) ) | |

LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF DISTRIBUTION OF SETTLEMENT PROCEEDS
AND INCORPORATED MEMORANDUM OF LAW

990987_1

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................................1

II.    FINAL CERTIFICATION OF THE CLASS IS APPROPRIATE.........................4

III.    THE SETTLEMENT MERITS FINAL APPROVAL ..........................................5

    A.    The Standards for Judicial Approval of Class Action Settlements...................................................................................................5

    B.    The Settlement Is the Result of Good Faith, Arm's-Length Negotiations Conducted by Informed and Experienced Counsel ...............7

    C.    The Settlement Is Fair, Adequate, and Reasonable Under the *Bennett* Factors.........................................................................................8

        1.    The Potential Obstacles to Success at Trial Support Approval of the Settlement ...............................................................8

        2.    Considering the Range of Possible Recovery, the Settlement Amount Is Clearly Within the Range of Reasonableness ..............................................................................11

        3.    The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement ......................................................................................12

        4.    The Reaction of Class Members Supports Approval of the Settlement.............................................................................13

        5.    The Stage of Proceedings Supports Approval of the Settlement ......................................................................................14

    D.    The Recommendation of Experienced Counsel Heavily Favors Approval of the Settlement .......................................................................15

IV.    THE COURT SHOULD APPROVE THE PLAN OF DISTRIBUTION.................................................................................................15

V.    NOTICE TO THE CLASS COMPLIED WITH DUE PROCESS ........................16

VI.    CONCLUSION.................................................................................................17

# TABLE OF AUTHORITIES

Page

## CASES

*Access Now, Inc. v. Claire's Stores, Inc.*,
   No. 00-14017-CIV-MOORE, 2002 U.S. Dist. LEXIS 28975
   (S.D. Fla. May 7, 2002) ...............................................................................................13

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*,
   211 F.R.D. 457 (S.D. Fla. 2002) ..................................................................................7

*Beavers v. Am. Cast Iron Pipe Co.*,
   164 F. Supp. 2d 1290 (N.D. Ala. 2001) .....................................................................10

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988),
   *aff'd*, 899 F.2d 21 (11th Cir. 1990)..................................................................... *passim*

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ............................................................................ *passim*

*Bennett v. Behring Corp.*,
   96 F.R.D. 343 (S.D. Fla. 1982),
   *aff'd*, 737 F.2d 982 (11th Cir. 1984)............................................................................5

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) ...................................................................................7

*Canupp v. Sheldon*,
   No. 2:04-cv-260-FTM-99DNF, 2009 U.S. Dist. LEXIS 113488
   (M.D. Fla. Nov. 23, 2009) ...........................................................................................7

*Cifuentes v. Regions Bank*,
   No. 11 CV 23455 FAM, 2014 U.S. Dist. LEXIS 37458
   (S.D. Fla. Mar. 20, 2014) .........................................................................5, 6, 10, 12

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ...............................................................................7, 15

*Garst v. Franklin Life Ins. Co.*,
   No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666
   (N.D. Ala. June 28, 1999) ................................................................................. *passim*

*In re Chicken Antitrust Litig. Am. Poultry*,
   669 F.2d 228 (5th Cir. 1982) .....................................................................................15

**Page**

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) .................................................................11

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................15

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ...............................................................15

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088 (5th Cir. 1977) ...................................................................17

*In re Smith*,
926 F.2d 1027 (11th Cir. 1991) ...............................................................7, 15

*In re Sunbeam Sec. Litig.*,
176 F. Supp. 2d 1323 (S.D. Fla. 2001) ...................................................11, 14

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) ...................................................................6, 7

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..........................................................12

*Juris v. Inamed Corp.*,
685 F.3d 1294 (11th Cir. 2012) ...................................................................16

*N. Star Capital Acquisitions, LLC v. Krig*,
No. 3:07-cv-264-J-32MCR, 2011 U.S. Dist. LEXIS 4596
(M.D. Fla. Jan. 10, 2011) .............................................................................5

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985).................................................................................4, 17

*Ressler v. Jacobson*,
822 F. Supp. 1551 (M.D. Fla. 1992)........................................................12, 13

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
297 F.R.D. 683 (S.D. Fla. 2014)..........................................................8, 14, 17

*Strube v. Am. Equity Inv. Life Ins. Co.*,
226 F.R.D. 688 (M.D. Fla. 2005)......................................................... *passim*

- iii -

**Page**

*Warren v. Tampa*,
    693 F. Supp. 1051 (M.D. Fla. 1988),
    *aff'd*, 893 F.2d 347 (11th Cir. 1989) .................................................................5, 6, 7

*Zuckerman v. Smart Choice Auto Group, Inc.*,
    No. 6:99-CV-237-ORL28KRS, 2001 WL 686879
    (M.D. Fla. May 3, 2001) ............................................................................................10

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 23 ...................................................................................................................5, 7
    Rule 23(e).......................................................................................................1, 6, 16

17 C.F.R.
    §240.10b-5(1).............................................................................................................3, 9

## SECONDARY AUTHORITY

William B. Rubenstein, Alba Conte & Herbert B. Newberg,
4 *Newberg on Class Actions* (5th ed. 2014)
    §13:45 ...............................................................................................................................8

- iv -

## MOTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiff Nick Mogensen ("Lead Plaintiff") and the Class in the above-captioned action (the "Action"), respectfully submit this motion for final approval of the settlement of this class action for $3,425,000.00 in cash (the "Settlement") and approval of the Plan of Distribution of the net settlement proceeds.  The terms and conditions of the Settlement are set forth in the Stipulation and Agreement of Settlement dated August 25, 2014 (the "Stipulation"), which was previously filed with the Court.[1]  *See* Dkt. No. 67-1.  The Stipulation resolves Lead Plaintiff's and the Class' claims against all Defendants.  The Settlement and Plan of Distribution are fair, reasonable, and adequate and should be approved by the Court.

This motion is supported by the accompanying Declaration of Robert J. Robbins in Support of Final Approval of Class Action Settlement and Plan of Distribution of Settlement Proceeds, and an Award of Attorneys' Fees and Expenses (the "Robbins Declaration" or "Robbins Decl."), which is incorporated by reference.[2]

## MEMORANDUM OF LAW

## I.     PRELIMINARY STATEMENT

The Settlement was reached on behalf of all Persons who purchased or acquired Body Central Corporation ("Body Central") common stock during the period from November 10, 2011 and June 18, 2012, inclusive (the "Class") only after Lead Counsel, *inter*

---

[1]   All capitalized terms that are not defined herein shall have the same meanings as set forth in the Stipulation.

[2]   The Robbins Declaration contains a more detailed history of the Action, the claims asserted, the investigation undertaken, the negotiation and substance of the Settlement, the substantial risks of the Action, and the reasonableness of the fee request.

- 1 -

*alia*: (i) conducted an extensive investigation into the underlying facts, including reviewing and analyzing documents filed publicly by Body Central with the SEC; (ii) reviewed other publicly available information, including press releases, news articles, and other public statements issued by or concerning Body Central and certain of the Defendants ("Individual Defendants"), as well as research reports issued by financial analysts concerning Body Central; (iii) thoroughly researched the law pertinent to the Class Members' claims and Defendants' defenses; (iv) retained and supervised investigators who identified potential witnesses, contacted many, and interviewed several former Body Central employees and others with relevant knowledge; (v) consulted with internal Robbins Geller Rudman & Dowd LLP analysts on valuation, damages, and causation issues; (vi) prepared and filed complaints specifying Defendants' violations of the federal securities laws; (vii) opposed a motion to dismiss the Corrected Amended Class Action Complaint for Violations of the Federal Securities Laws (the "CAC") and prepared a motion to strike Defendants' motion for judicial notice; (viii) filed Lead Plaintiff's motion to partially modify the Private Securities Litigation Reform Act of 1995 ("PSLRA") mandated discovery stay to obtain information about the Individual Defendants' stock trades; and (ix) negotiated this Settlement with Defendants. *See* Robbins Decl., ¶6. This Settlement was reached at a time when Lead Plaintiff and Lead Counsel were well informed of the strengths and weaknesses of the case, the risks of continued litigation, and the propriety of settlement.

As discussed herein and in the Robbins Declaration, Lead Plaintiff faced significant risks in obtaining a more favorable outcome after continued litigation. For example, the Second Amended Class Action Complaint for Violations of the Federal Securities Laws

- 2 -

("SAC") could be dismissed for failure to satisfy the pleading standards for scienter imposed by the PSLRA (the same grounds that warranted dismissal of the CAC), or after one or more motions for summary judgment following the completion of fact and expert discovery.  This is particularly true given the complexities of the issues involved in the Action, including whether some of the statements alleged to be materially false and misleading were inactionable corporate puffery or forward-looking statements, and whether stock sales made pursuant to a Rule 10b-5(1) trading plan would negate any inference of scienter from those trades.  Robbins Decl., ¶27.  If the Court or a jury accepted any of these arguments at summary judgment and/or trial, it would have severely reduced or eliminated the Class' damages.  In short, Lead Plaintiff faced numerous obstacles in proving both liability and damages.  *See id.*, ¶¶36-42.

Lead Counsel, who is well-respected and experienced in prosecuting securities class actions, is of the opinion that the Settlement is a very good result under the circumstances, and in the best interest of the Class.  This conclusion is based on a complete analysis of the evidence, the substantial risks, expense and uncertainties in continuing the Action, the relative strengths and weaknesses of the claims and defenses asserted, the legal and factual issues presented, and past experience in litigating complex actions similar to the present Action.

Members of the Class agree with Lead Counsel's conclusion.  Pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice (Dkt. No. 70) ("Preliminary Approval Order"), the Notice and Proof of Claim and Release form were mailed to 12,284 potential Class Members and nominees.  *See* Declaration of Carole K.

- 3 -

Sylvester Re A) Mailing of the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing and the Proof of Claim and Release Form, B) Publication of the Summary Notice, and C) Internet Posting, ¶10, Ex. 2 to the Robbins Declaration.[3]  Additionally, the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire* on November 4, 2014. *Id.*, ¶13.  The Notice apprised Class Members of their right to, and procedure for, objecting to the Settlement, the Plan of Distribution, or to Lead Counsel's application for attorneys' fees and expenses.  The time to file objections will expire on December 31, 2014.  To date, however, no objections have been raised to any aspect of the Settlement, the Plan of Distribution, or Lead Counsel's request for attorneys' fees and expenses.  Nor have any requests for exclusion been received.

The overwhelming acceptance of the Settlement by the Class supports a finding that the Settlement and Plan of Distribution are fair, reasonable, and adequate and should be approved.

## II.     FINAL CERTIFICATION OF THE CLASS IS APPROPRIATE

A necessary part of the settlement process for class actions is the certification of the class before or at the time the settlement is approved by the court.  It is widely recognized that a class action is a particularly appropriate mechanism for individual shareholders to obtain recovery in cases of alleged securities fraud.  *See, e.g.*, *Phillips Petroleum Co. v.*

---

[3]     All exhibits referenced herein are annexed to the Robbins Declaration.  For clarity, citations to exhibits that themselves have attached exhibits, will be referenced as "Ex. __-__."  The first numerical reference is to the designation of the entire exhibit attached to the Robbins Declaration and the second reference is to the exhibit designation within the exhibit itself.

990987_1

*Shutts*, 472 U.S. 797, 809 (1985) (Class actions allow "[Lead] [P]laintiffs to pool claims which would be uneconomical to litigate individually. . . . [M]ost of the [Lead] [P]laintiffs would have no realistic day in court if a class action were not available.").[4]

The Court previously granted preliminary certification of the Class for settlement purposes only. *See* Preliminary Approval Order, ¶3; Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement and Memorandum of Legal Authority in Support Thereof, Dkt. No. 66 at 16-17. Because nothing has occurred since then to cast doubt on whether the applicable prerequisites of Rule 23 are met, the Court should now finally certify the Class. *See Cifuentes v. Regions Bank*, No. 11 CV 23455 FAM, 2014 U.S. Dist. LEXIS 37458, at *16 (S.D. Fla. Mar. 20, 2014) (certifying class action for settlement purposes); *N. Star Capital Acquisitions, LLC v. Krig*, No. 3:07-cv-264-J-32MCR, 2011 U.S. Dist. LEXIS 4596, at *7 (M.D. Fla. Jan. 10, 2011) (same); *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (same).

## III.    THE SETTLEMENT MERITS FINAL APPROVAL

### A.    The Standards for Judicial Approval of Class Action Settlements

There is a "strong judicial policy favoring settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *accord Strube*, 226 F.R.D. at 697; *Warren v. Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

"[S]ettlements [of class actions] are 'highly favored in the law and will be upheld whenever possible.'" *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982), *aff'd*,

---

[4]    Citations and footnotes are omitted, and emphasis is added, unless otherwise noted.

737 F.2d 982 (11th Cir. 1984); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th

Cir. 1992); *Cifuentes*, 2014 U.S. Dist. LEXIS 37458, at *11.  As the court in *U.S. Oil & Gas*

noted:

> Complex litigation – like the instant [class action] case – can occupy a
> court's docket for years on end, depleting the resources of the parties and the
> taxpayers while rendering meaningful relief increasingly elusive.
> Accordingly, the Federal Rules of Civil Procedure authorize district courts to
> facilitate settlements . . . .

967 F.2d at 493.

In approving a settlement under Federal Rule of Civil Procedure 23(e), the district

court must find that it is "'fair, adequate and reasonable and is not the product of collusion

between the parties.'"  *Bennett*, 737 F.2d at 986; *accord Strube*, 226 F.R.D. at 697.  "The

Court is required to make a two part determination that: 1) there is no fraud or collusion in

reaching the settlement, and 2) the settlement is fair, adequate and reasonable."  *Warren*, 693

F. Supp. at 1054.

The Eleventh Circuit has held that in determining whether a proposed settlement is

"fair, adequate and reasonable," a court should look to the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3)
> the point on or below the range of possible recovery at which a settlement is
> fair, adequate and reasonable; (4) the complexity, expense and duration of
> litigation; (5) the substance and amount of opposition to the settlement; and
> (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986; *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 537

(S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).  In addition, approval of a class action

settlement, including application of the foregoing factors, "is committed to the sound

discretion of the district court." *U.S. Oil & Gas*, 967 F.2d at 493; *Bennett*, 737 F.2d at 987 (same).

Finally, in evaluating a settlement, the court "is entitled to rely on the judgment of experienced counsel for the parties." *Canupp v. Sheldon*, No. 2:04-cv-260-FTM-99DNF, 2009 U.S. Dist. LEXIS 113488, at *13 (M.D. Fla. Nov. 23, 2009); *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 470 (S.D. Fla. 2002) (same); *see also Warren*, 693 F. Supp. at 1060 (in approving settlement of class action, "[t]he Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"). Indeed, in reviewing a settlement under Rule 23, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977);[5] *accord In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991); *Strube*, 226 F.R.D. at 703.

Here, as set forth *infra*, the Settlement clearly warrants the Court's approval.

**B.**    **The Settlement Is the Result of Good Faith, Arm's-Length Negotiations Conducted by Informed and Experienced Counsel**

A threshold consideration is whether a proposed settlement is the product of fraud or collusion between the parties. *See Cannup*, 2009 U.S. Dist. LEXIS 113488, at *26-*27 ("In determining . . . fraud or collusion, the court examines whether the settlement was achieved in good faith through arms-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical

---

[5]    Opinions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209-11 (11th Cir. 1981) (*en banc*).

990987_1

behavior . . . on the part of class counsel.") (citing *Bennett*, 737 F.2d at 987 n.9).  Courts

"presume that a proposed class action settlement is fair when certain factors are present,

particularly evidence that the settlement is the product of arms-length negotiation, untainted

by collusion."  William B. Rubenstein, Alba Conte & Herbert B. Newberg, 4 *Newberg on*

*Class Actions* §13:45, at 442 (5th ed. 2014); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297

F.R.D. 683, 692 (S.D. Fla. 2014) ("[W]here the case proceeds adversarially, this counsels

against a finding of collusion.").

Here, the Settlement satisfies this threshold consideration.  Lead Plaintiff negotiated

the Settlement on a well-informed basis and with a thorough understanding of the merits and

values of the Settling Parties' claims and defenses.  Indeed, the Settlement is the product of

informed arm's-length negotiations between sophisticated and experienced counsel.

Moreover, Lead Counsel has extensive experience in securities fraud class action

litigation and a well-deserved reputation for tenaciously prosecuting claims on behalf of

plaintiffs and classes.  *See, e.g.*, Robbins Decl., ¶61.  Indeed, Lead Counsel is responsible for

many of the largest class action settlements achieved and has decades of experience in

successfully prosecuting some of the most complex class actions.

### C.     The Settlement Is Fair, Adequate, and Reasonable Under the *Bennett* Factors

#### 1.     The Potential Obstacles to Success at Trial Support Approval of the Settlement

The first *Bennett* factor is "the likelihood of success at trial."  *Bennett*, 737 F.2d at

986.  "In assessing plaintiffs' likelihood of success at trial for purposes of determining

whether the Settlement is fair, adequate and reasonable, the Court should make only a

'limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement.'" *Garst v. Franklin Life Ins. Co.*, No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at *62 (N.D. Ala. June 28, 1999); *accord Strube*, 226 F.R.D. at 697-98.

Although Lead Plaintiff believes that his claims against Defendants are meritorious, there were significant obstacles to success at trial. For example, even if the SAC survived the motion to dismiss, which was pending at the time of settlement, Lead Plaintiff faced the risk that he would not be able to prove scienter of Defendants, which is well- recognized as a difficult and uncertain element in any securities fraud case. Defendants maintained that their stock sales during the Class Period were made pursuant to pre-arranged Rule 10b-5(1) trading plans, and were not in any way suspicious. Robbins Decl., ¶37. On summary judgment or at trial, Defendants would likely argue that Lead Plaintiff cannot prove that the Individual Defendants were aware that Body Central's merchandise was stale or that Defendants did not believe their public statements concerning Body Central's sales predictions. *Id.*, ¶29. Defendants also maintained that their statements were forward-looking and, therefore, protected by the PSLRA's safe harbor. If the Court or the jury found those statements were, in fact, forward-looking, Lead Plaintiff would have to prove that Defendants made the statements with actual knowledge of their falsity. *Id.*

Lead Plaintiff not only faced risks in proving Defendants' liability, but also faced risks with respect to loss causation and proof of damages. The SAC's loss causation theory is premised on two corrective disclosures between May 3, 2012 and June 18, 2012.

- 9 -

Defendants would likely raise issues about the connection between these disclosures and the alleged misrepresentations.

These issues would have been before the jury and would have required significant expert testimony and analysis.  As in any securities class action, proof of damages would have been a disputed matter subject to conflicting expert testimony, and it would not be possible to predict with any confidence how a jury would resolve such a dispute.  *See, e.g.*, *Zuckerman v. Smart Choice Auto Group, Inc.*, No. 6:99-CV-237-ORL28KRS, 2001 WL 686879, at *10 (M.D. Fla. May 3, 2001) ("The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions."); *Behrens*, 118 F.R.D. at 542 ("In the battle of experts, 'it is virtually impossible to predict with certainty which testimony will be credited.'").

As the court held in *Garst*, "[t]he existence of these (and other) potential obstacles to plaintiffs' success on the merits argues in favor of approving the settlement."  *Garst*, 1999 U.S. Dist. LEXIS 22666, at *64; *accord Behrens*, 118 F.R.D. at 540 (approving class action settlement because "[i]f the plaintiff pursued this cause through trial, the likelihood of achieving any success would be at risk"); *see Cifuentes*, 2014 U.S. Dist. LEXIS 37458, at *12 ("At the time the Parties agreed to terms, there was great risk facing Plaintiffs and the Class that could have resulted in Plaintiffs and the Class recovering far less than the common fund created vis-a-vis the Settlement or, for worse, nothing at all."); *Beavers v. Am. Cast Iron Pipe Co.*, 164 F. Supp. 2d 1290, 1298 (N.D. Ala. 2001) ("there are both strengths and weaknesses in each party's position[;] [t]his uncertainty of outcome is another factor favoring approval of the settlement").

Because of the risks associated with continuing to litigate and proceeding to trial, including overcoming the pending motion to dismiss and likely summary judgment motions, there was a danger that Lead Plaintiff would not have prevailed against Defendants on any of his claims, in which case the Class would have received nothing.  Therefore, Lead Counsel believes that the Settlement obtained is in the best interest of the Class.

### 2. Considering the Range of Possible Recovery, the Settlement Amount Is Clearly Within the Range of Reasonableness

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Garst*, 1999 U.S. Dist. LEXIS 22666, at *64; *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) ("'the second and third considerations of the *Bennett* test are easily combined'"); *accord Behrens*, 118 F.R.D. at 541.

"[T]he Court must determine 'whether [the settlement amount] falls within the "range of reasonableness," not whether it is the most favorable possible result in the litigation.'" *Garst*, 1999 U.S. Dist. LEXIS 22666, at *68 (quoting *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993)).  As *Garst* observed:

> "[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is inadequate; there is no reason why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."

1999 U.S. Dist. LEXIS 22666, at *64-*65; *accord Sunbeam*, 176 F. Supp. 2d at 1332; *Behrens*, 118 F.R.D. at 542.  Although Lead Counsel believes that the damages suffered by

- 11 -

Class Members exceed the amount of the Settlement, the risk of continued litigation strongly militates in favor of approving the Settlement.

Therefore, given the risks of proceeding with the litigation, "the proposed Settlement provides relief that is fair and adequate and within the 'range of reasonableness,'" and this factor favors approval of the Settlement. *Garst*, 1999 U.S. Dist. LEXIS 22666, at *68; *see also Bennett*, 737 F.2d at 986 (affirming holding that class action settlement was fair, adequate, and reasonable, because "compromise is the essence of settlement").

### 3. The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement

Assuming that the Court denies Defendants' pending motion to dismiss, further litigation against Defendants would necessarily involve significant additional time and money for document and deposition discovery, expert discovery, class certification, summary judgment proceedings, trial, and possible appeals.  In light of the costs and delays inherent in litigating this case to trial, the "unpredictability of a lengthy and complex . . . trial" – as well as the likelihood of further appellate activity if Lead Plaintiff was to prevail at trial – "the benefits to the class of the present settlement become all the more apparent." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 337 (S.D.N.Y. 2005) (approving class action settlement after finding that although the litigation prior to the settlement "was a costly undertaking for all parties . . . [n]evertheless, further litigation would have resulted in considerable additional expense"); *Cifuentes*, 2014 U.S. Dist. LEXIS 37458, at *14-*15.

990987_1

A settlement at this juncture results in a present recovery without the considerable risk, expense, and delay of further litigation.  Therefore, this factor weighs in favor of approval of the Settlement.

### 4.   The Reaction of Class Members Supports Approval of the Settlement

The reaction of class members to a proposed settlement is a significant factor to be considered and the absence of substantial objections "is excellent evidence of the settlement's fairness and adequacy." *Ressler*, 822 F. Supp. at 1556; *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV-MOORE, 2002 U.S. Dist. LEXIS 28975, at *20 (S.D. Fla. May 7, 2002) ("[t]he fact that no objections have been filed strongly favors approval of the settlement"); *Garst*, 1999 U.S. Dist. LEXIS 22666, at *71-*72 ("small amount of opposition strongly supports approving the Settlement").

To date, 12,284 Notices and Proof of Claim and Release forms have been mailed to potential Class Members and nominees. Ex. 2, ¶10.  The Notice informed Class Members of their right to exclude themselves from the Class or their right to object to any aspect of the Settlement, the Plan of Distribution, and/or Lead Counsel's application for an award of attorneys' fees and expenses.  While the deadline for objecting to the Settlement has not passed, to date, there have been no objections, or any requests for exclusion.[6]

---

[6]   Class Members have until December 31, 2014 to request exclusion from the Class or object to the matters to be considered during the Settlement Hearing.  Should any objections and/or exclusion requests be received, they will be addressed by Lead Counsel in its reply papers that will be filed on or before January 14, 2015.

990987_1

### 5.   The Stage of Proceedings Supports Approval of the Settlement

The purpose of considering the stage of the proceedings is to ensure that plaintiffs had sufficient information to evaluate the case and to determine the adequacy of the settlement against further litigation. *Behrens*, 118 F.R.D. at 544. "Early settlements are favored. Indeed, 'vast formal discovery need not be taken.'" *Saccoccio*, 297 F.R.D. at 694.[7]

Here, the Settlement was reached only after Lead Counsel filed detailed complaints based on its comprehensive investigation, which included identifying more than 100 potential witnesses, and interviews with several individuals with knowledge of the issues presented. *See* Robbins Decl., ¶23. Also in connection with the pre-filing investigation, Lead Counsel thoroughly reviewed and analyzed publicly available information regarding Body Central, including, but not limited to, its SEC filings, press releases, and securities analysts' reports about Body Central. *Id.* Defendants had also filed two motions to dismiss, giving Lead Counsel insight into the defenses Defendants would press throughout the litigation.

Accordingly, Lead Plaintiff and Lead Counsel believe that they had a sufficient understanding of the facts of the case when negotiating the Settlement such that this factor favors approval of the Settlement. *See Sunbeam*, 176 F. Supp. 2d at 1332 (because "case had progressed to a point where each side was well aware of the other side's position and the

---

[7]   Formal discovery was stayed pursuant to the provisions of the PSLRA, which, absent good cause shown, mandated the stay of discovery pending resolution of a motion to dismiss. Lead Plaintiff moved for a partial lifting of the stay for the purpose of discovering information about the Individual Defendants' stock sales. Robbins Decl., ¶28; Dkt. No. 52. Defendants opposed the motion (Dkt. No. 57), and it was denied by the Court on June 11, 2014 (Dkt. No. 60).

990987_1

merits thereof[,] [t]his factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable"); *Behrens*, 118 F.R.D. at 544.

### D. The Recommendation of Experienced Counsel Heavily Favors Approval of the Settlement

The Court is entitled to rely on the judgment of counsel, and, indeed, "'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* at 539 (quoting *Cotton*, 559 F.2d at 1330); *accord Smith*, 926 F.2d at 1028; *Strube*, 226 F.R.D. at 703. Lead Counsel strongly endorses the Settlement. As the court held in *Strube*, "[Class] counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Id.* at 703.

## IV. THE COURT SHOULD APPROVE THE PLAN OF DISTRIBUTION

The standard for approval of a plan of distribution of settlement proceeds is the same as the standard for approving a settlement: whether it is "'fair, adequate and reasonable and is not the product of collusion between the parties.'" *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rationale basis.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004). "A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008).

The Plan of Distribution, fully described in the Notice and in the Robbins Declaration, provides a fair and equitable method of dividing the Net Settlement Fund among Class Members who submit timely and valid Proof of Claim and Release forms

990987_1

("Authorized Claimants").  It was formulated with the assistance of a consulting damages expert who analyzed the movement of Body Central's common stock after the alleged false and misleading statements made by Defendants and after the alleged corrective disclosures. It takes into account the portion of the stock drops attributable to the alleged fraud.  The Plan of Distribution was given considerable thought and attention to assure that the net settlement proceeds would be fairly and equitably distributed based upon the amount of inflation in the prices of Body Central common stock during the Class Period that was attributable to the alleged wrongdoing.  *See* Robbins Decl., ¶¶48-52.

The Plan of Distribution provides for the calculation of each claimant's "Recognized Claim," which will be calculated for each acquisition/purchase of Body Central common stock made during the Class Period.  The calculation of the "Recognized Claim" will depend upon when the shares were purchased, acquired or sold, and whether those shares were held until the conclusion of the Class Period or, if not, when they were sold.

Lead Counsel believes that the Plan of Distribution set forth in the Notice is fair and reasonable, and respectfully submits that it should be approved by the Court.  There have been no objections to it submitted by Class Members.

## V.      NOTICE TO THE CLASS COMPLIED WITH DUE PROCESS

Rule 23(e) provides that "notice of the proposed dismissal or compromise [of a class action] shall be given to all members of the class in such manner as the court directs."  *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1307 n.10 (11th Cir. 2012).  "The notice should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"

990987_1

*Saccoccio*, 297 F.R.D. at 691 (quoting *Phillips*, 472 U.S. at 811-12).  The Notice program

utilized here, as set by the Preliminary Approval Order, easily meets this standard.

The Notice program was carried out by the Claims Administrator, Gilardi & Co. LLC

("Gilardi"), a nationally-recognized notice and claims administration firm, under the

supervision of Lead Counsel.  *See* Ex. 2.  Gilardi provided individual notice *via* First-Class

Mail to each member of the Class whose address was reasonably ascertainable.  In addition,

Gilardi caused the Summary Notice to be published in *Investor's Business Daily* and over the

*PR Newswire*.  Ex. 2, ¶13 & Ex. 2-D.

The Notice amply describes the terms of the Settlement, the claims at issue, the

releases, the process for objecting and opting out of the Settlement, how to make a claim, all

pertinent deadlines and the time, date and place of the Settlement Hearing.  Ex. 2-A.  Both a

dedicated telephone hotline and a website were established to assist potential Class Members

who had questions about the Settlement or the claims process.  Ex. 2, ¶¶11-12.  These efforts

to inform Class Members of the Settlement, and their rights and obligations associated

therewith, are more than sufficient to satisfy due process.  *See In re Nissan Motor Corp.*

*Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977) (holding that notice must contain "an

adequate description of the proceedings written in objective, neutral terms, that . . . may be

understood by the average absentee class member"); *see also Saccoccio*, 297 F.R.D. at 691.

## VI.    CONCLUSION

For the reasons stated herein and in the Robbins Declaration, Lead Plaintiff

respectfully requests that the Court (i) finally approve the proposed Settlement as fair,

reasonable, and adequate and enter the proposed Judgment; (ii) grant final certification of the

990987_1

Class; and (iii) enter the proposed order approving the Plan of Distribution.  Proposed orders

will be submitted with Lead Plaintiff's reply papers, after the deadline for seeking exclusion

and objecting have passed.

DATED:  December 17, 2014              Respectfully submitted,

                                              ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
                                              DAVID J. GEORGE
                                              Florida Bar No. 0898570
                                              dgeorge@rgrdlaw.com
                                              ROBERT J. ROBBINS
                                              Florida Bar No. 0572233
                                              rrobbins@rgrdlaw.com
                                              HOLLY W. KIMMEL
                                              Florida Bar No. 970980
                                              hkimmel@rgrdlaw.com

                                                     s/ Robert J. Robbins
                                           ——————————————————————
                                                 ROBERT J. ROBBINS

                                              120 East Palmetto Park Road, Suite 500
                                              Boca Raton, FL  33432
                                              Telephone:  561/750-3000
                                              561/750-3364 (fax)

                                              ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                              ELLEN GUSIKOFF STEWART
                                              655 West Broadway, Suite 1900
                                              San Diego, CA  92101-8498
                                              Telephone:  619/231-1058
                                              619/231-7423 (fax)
                                              elleng@rgrdlaw.com

                                              Lead Counsel for Plaintiff

- 18 -

BOTTINI & BOTTINI, INC.
FRANCIS A. BOTTINI
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA  92037
Telephone:  858/914-2001
858/914-2002 (fax)
fbottini@bottinilaw.com

Additional Counsel for Plaintiff

990987_1

CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 17, 2014.

s/ Robert J. Robbins
ROBERT J. ROBBINS

ROBBINS GELLER RUDMAN
& DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

E-mail:  rrobbins@rgrdlaw.com

990987_1

# Mailing Information for a Case 3:12-cv-00954-HES-JRK Mogensen v. Body Central Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jerome F. Birn , Jr**
  jbirn@wsgr.com

- **Francis A. Bottini , Jr**
  sammirati@bottinilaw.com

- **Brian Danitz**
  bdanitz@wsgr.com

- **Kathleen B. Douglas**
  kdouglas@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Paul J. Geller**
  pgeller@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **David J. George**
  dgeorge@rgrdlaw.com,dwilens@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Holly Kimmel**
  hkimmel@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Kelley M. Kinney**
  kkinney@wsgr.com,tbell@wsgr.com

- **Charles B. Lembcke**
  cbl@cbllaw.com,fran@cbllaw.com

- **Robert Jeffrey Robbins**
  rrobbins@rgrdlaw.com,e_file_sd@rgrdlaw.com,cthornton@rgrdlaw.com,e_file_fl@rgrdlaw.com,ckent@rgrdlaw.com

- **Steven M. Schatz**
  sschatz@wsgr.com

- **Ellen Gusikoff Stewart**
  elleng@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)